**LEIBY et al. v. CITY OF MANCHESTER et al.**

**Civil No. 61.**

District Court, D. New Hampshire.
June 29, 1940.

Hayden Covington, of Brooklyn, N. Y., for Leiby et al.

Devine & Tobin, of Manchester, N. H., for City of Manchester et al.

MORRIS, District Judge.

This is a bill in equity brought by the plaintiffs to restrain the defendants from alleged illegal and wrongful interference with plaintiff's civil rights secured to them by the Fourteenth Amendment of the Constitution of the United States.

The plaintiff Milton L. Leiby and the twelve individual associates named in the bill of complaint are all residents of the State of New Hampshire and members of a religious cult known as "Jehovah's Witnesses".

The parent association, joined as a party plaintiff, is the Watch Tower Bible and Tract Society, Inc., a corporation organized under the laws of the State of New York. Each individual plaintiff is a duly authorized representative of said corporate plaintiff under whose direction each performed and performs the work of preaching the gospel and distributing their literature, on the streets of Manchester and other parts of the State of New Hampshire.

The defendant City of Manchester is a municipal corporation organized and existing under the laws of the State of New Hampshire, and is located in Hillsborough County in said State with its officers and agents domiciled therein.

Defendant James F. O'Neil is a citizen of the State of New Hampshire and the duly qualified and acting Chief of Police of said City of Manchester.

Defendant Alfred J. Chretien is a citizen of the State of New Hampshire and the duly qualified and acting Associate Justice of the Municipal Court in said City of Manchester.

The business of the plaintiff corporation is printing, publishing and disseminating Bible truths in various languages by means of tracts, pamphlets, books, periodicals and magazines.

One of such magazines is called the "Watchtower" and another is designated "Consolation". The purpose of the "Watchtower" magazine as set forth on the inside cover of the front page is stated in part as follows: "This journal is published for the purpose of enabling the people to know Jehovah God and his purposes as expressed in the Bible." "Consolation" is a magazine the columns of which are devoted to information on world events, "and showing the relationship between such current happenings and the fulfillment of prophecies of Almighty God, Jehovah, recorded centuries ago in His Word, the Bible." The magazine sells for five cents a copy or one dollar a year. From persons receiving such magazines plaintiffs usually take a money contribution, but to persons unable to contribute plaintiffs give the magazines free and without charge.

The individual plaintiffs have engaged in street distribution of said magazines hereinbefore described since the first of March, 1940, and while engaged in such distribution have been arrested on a complaint charging them with a violation of a city ordinance.

In July, 1912, the City of Manchester passed an ordinance, entitled "Newsboys and Bootblacks", worded as follows:

"Section 1. No person shall, in any street or public place of the City of Manchester, work as a bootblack, or sell or expose for sale, any newspapers, books, pamphlets or magazines, unless there shall first have been issued to him a badge, as hereinafter provided, nor unless he shall comply with the terms under which such badge shall be issued."

The ordinance also provides that the superintendent of schools shall issue all badges in accordance with the provisions of the ordinance and that he shall keep a record showing the name and age of the applicant and the date of issuing and file all documents necessary to support the said record. A fee of fifty cents is charged to each applicant to be returned upon surrender of the badge.

Section 4 of the ordinance provides a penalty as follows: "Any person who violates any of the aforesaid regulations may have his license revoked by the board of mayor and aldermen upon the complaint of any citizen or public officer and be subject to a fine of not less than one dollar nor more than five dollars for each offense."

Members of Jehovah's Witnesses have selected Saturday evenings, when there are more people congregated on the street, for the sale and distribution of their literature. On numerous occasions members have been arrested and locked up over the week-end, appearing in court Monday morning tried and convicted for violation of the ordinance in question. Fines of five dollars were imposed in each instance and appeals taken to the superior court and bail fixed in the sum of $100. The cases have, therefore, passed beyond the City of Manchester, its police and municipal court.

This bill in equity is prosecuted for the purpose of restraining the City of Manchester and its municipal authorities from enforcing the city ordinance in the manner above described.

On May 24, 1940, the bill came on for hearing on the question of granting a temporary injunction. After hearing oral arguments counsel were granted ten days within which to file briefs in support of their contention. The Court suggested that the complainants refrain from committing any acts in violation of the ordinance until there was a ruling on the question. The complainants readily agreed to the Court's suggestion. After the briefs were received and examined, the case was set down for hearing on its merits without ruling on the question of a temporary injunction. At the hearing on June 18th counsel for the defendants charged the complainants with violating the agreement made with the Court, in that two of Jehovah's witnesses were distributing their literature on the streets of Manchester on the evening of June 15 and were arrested. This was admitted by the witnesses whereupon counsel made a motion to dismiss on the ground that the complainants did not come into court with clean hands.

I find that it is true that at least two of the complainants wilfully and knowingly disregarded the agreement made with the Court, in fact they were very defiant and indicated a disposition to carry out their desires regardless of any orders the Court might make. Had this agreement been in writing and made as a court order the action would have been summarily dismissed when the witnesses brazenly testified to the violation of their agreement.

The ordinance in question was passed July 19, 1912. It appears to have been motivated to assist the authorities in enforcing attendance in the public schools. It is, however, broad enough to exclude the sale or distribution of literature on the streets of Manchester by adults as well as minors and if the ordinance is constitutional the officers of the city are well within their rights in enforcing it.

This brings us to the real question in issue, whether the ordinance as applied to these complainants is constitutional and, if constitutional, deprives complainants of their rights of freedom to worship Almighty God, as practised by them, freedom of speech, of press and of assembly in violation of the United States Constitution, Fourteenth Amendment, Section 1.

Counsel for the defendants, in his argument in support of the constitutionality of the municipal ordinance, called attention to the fact that it did not restrict any right of worship and did not prohibit the sale and distribution of complainants' literature

on the streets of Manchester, but was merely a matter of regulation and identification of those so engaged. It required that any person desiring to distribute or sell literature on the public streets must first get an identification button from the superintendent of schools who is bound to issue the same to anyone seeking to obtain it upon payment of fifty cents to be returned upon surrender of the badge. These statements of counsel were not controverted by complainants' witnesses and it does not appear that any of them ever contacted the superintendent of schools or applied for a badge.

A few excerpts from the testimony of the witnesses characterizes the attitude of the members of the sect with reference to complying with the ordinance in question.

Milton L. Leiby testified that he was an ordained minister of the gospel, one of Jehovah's witnesses and worked in connection with the Watch Tower Bible and Tract Society; that he was a representative for New Hampshire and connected with the Manchester company. He said he had been arrested seven times. He testified that it was the desire of each of Jehovah's witnesses in Manchester to engage in street distribution of their literature as a means of preaching the gospel; that their method of distribution was to stand on the street corner at a busy intersection and offer the magazine to the passing public for a small contribution of five cents to those who are willing to accept the same. Those who are not able to contribute, the magazine is given to them on the promise that they will read it. He said: "We believe in obeying all the laws of the land that are constitutional and do not conflict with the law of God." He testified that he refused to obey the ordinance in question because it conflicted with God's law, and stated: "We obey God's commandments and whatever we are instructed by The Watch Tower Bible and Tract Society we obey."

When asked if he would salute the flag, his answer was, "I would not salute it." When asked for his reason, he testified as follows: "I respect the flag of this country, but the reason I don't salute it is because of God's commandments not to bow down to any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath, or that is in the water under the earth."

Leiby testified that there were approximately one hundred members of Jehovah's witnesses in Manchester and that each member was an ordained minister through the Scriptures. He said that he was the company servant, while George Papacostas is treasurer, Telemakus Scouffas is stock servant, George Caron is advertising servant, Nap. Isabel is back call servant.

George Papacostas of Manchester, N. H., testified that he was treasurer of the society and collected from forty to fifty dollars a month and approximately twenty-five dollars was sent to The Watch Tower Bible and Tract Society to pay for literature.

Several other witnesses testified along the same lines.

The First Amendment to the Constitution contains a provision that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * * or abridging the freedom of speech, or of the press;" and the Fourteenth Amendment provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." That the foregoing provisions of the Federal Constitution secures to citizens of the United States, freedom of the press, freedom of speech and freedom to worship Almighty God in accordance with the dictates of their own conscience is undeniable and too well established to require the citation of authorities. But the word "freedom" like the word "liberty" has its qualifications and limits. Freedom of speech would protect the most outrageous slander, freedom of the press, criminal libel and unrestrained religious enthusiasm may lead to the most dangerous practices. It was not with a view of securing unlimited freedom that the framers of the Constitution were moved to insert the provision above mentioned.

Religious belief is a state of mind and cannot be restrained by any law of Congress or of the State except when considered in connection with the rights and privileges of others in a well organized society of a free people. A person's religious belief cannot be accepted as a justification for his committing an overt act made criminal by the laws of the land. The municipal ordinance under consideration does not prohibit free speech, it does not prohibit the distribution on the streets of Manchester of magazines devoted to the principles of complainants' religious belief, it does not attempt to restrain them in peaceably assembling for religious study. The only re-

846

quirement is a regulation of their conduct on the public streets.

The City of Manchester has prescribed regulations, which do not appear to the Court to be unreasonable, with reference to the use of its streets. In its effort to regulate truancy in its public schools and protect its citizens against fraud and imposition it passed the ordinance in question. Persons desiring to sell literature have the unquestioned right to apply to the superintendent of schools for a badge upon payment of a fee of fifty cents, to be returned upon surrender of the same and furnishing the superintendent with information sufficient to identify the applicant. Jehovah's witnesses have never even attempted to conform to this regulation, hence they have never been refused. The reason why they are unwilling to conform to the ordinance is their particular religious belief as stated in their bill of complaint in the following language: "That plaintiff and others of Jehovah's witnesses cannot and will not stop said lawful work and cannot and will not apply for a badge or a permit as required by said ordinance because for them to do so would be, as they sincerely believe, an insult to Almighty God, Jehovah, and a violation of His Supreme law and which would result in their everlasting destruction." Their obstinance in insisting on carrying out this tenet of their religious belief is what brings them in contact with others who do not share a like belief. They distinguish between religion, which they declare is a "snare and a racket" and Christianity, which they are commissioned to preach to the world. They openly proclaim that they will not conform to man-made laws if they conflict in any way with the law of God, as is found in disconnected passages in the bible and interpreted by their teachers. Each individual complainant believes that they and each of them are directed and commissioned to do their work under a mandate from God contained in His written word in the manner hereinabove set forth under pain of everlasting destruction for failure or refusal.

There is no evidence that the complainants have committed any breach of the peace in the City of Manchester but their attitude of a "Holier than Thou" status has been productive of street brawls, destruction of property and bloodshed elsewhere as evidenced by recent reported happenings in the State of Maine.

The complainants urge that to require them to obtain a badge as a condition of soliciting support for their views and sale of their literature amounts to a prior restraint in the exercise of their religion within the meaning of the Constitution.

The line of demarkation between municipal ordinances so framed as to abridge the rights of free speech, freedom of the press or freedom of conscience and those reasonable regulations for the preservation of peace and good order is not easily determined: Minersville School District et al. v. Walter Gobitis et al., 60 S.Ct. 1010, 84 L. Ed. ——, decided June 3, 1940; Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155, decided November 22, 1939.

The Supreme Court of New Hampshire has never had before it the particular ordinance involved in this action. It has recently passed on the validity of a state law, State v. Cox et al., requiring a license for those taking part in a parade or procession on a public street. A study of the opinion discloses that Jehovah's Witnesses staged a demonstration, called an "Information March", in the City of Manchester without first obtaining a license. They were arrested, found guilty in the superior court, appealed to the Supreme Court where their conviction was sustained. The statute under which they were convicted was held constitutional under the state as well as the Federal constitution. Apparently the defendants raised the same question of religious immunity as the complainants are now urging in the present case. However, the two cases are not parallel, except in so far as the religious issue is concerned, and a somewhat different question is raised in the case at bar from that determined by the Supreme Court. The defendants in the state case and the complainants in the present case assert the claim that to obtain a license in one and a badge in the other would interfere with their religious beliefs.

The instant case contains an alleged violation of freedom of speech and of the press and the right to sell and distribute magazines and literature devoted to the complainants' cause on the public streets in Manchester.

One other New Hampshire case has been called to my attention, State v. White, 64 N.H. 48, 5 A. 828, 830, decided in 1886, in which there was a conviction under a state statute prohibiting beating a drum on the public streets. A religious issue was there

involved and it was held that: "Religious liberty as recognized and secured by the constitution does not mean a license to engage in acts having a tendency to disturb the public peace under a form of religious worship."

The sidewalks as well as the streets are public and designed for travel. For Jehovah's Witnesses to stand on busy street corners holding a staff with printed matter attached thereto for the purpose of vending magazines and literature devoted to their cause is putting the public street to a use other than that for which they are intended. I see no reason why they may not be subject to reasonable regulations as was decided in the case of State v. Cox et al., supra. The ordinance involved has no relation to religious beliefs. True, it is man-made, but it does not offend the law of God except insofar as the complainants choose to interpret it.

■ The corporate complainant has no standing in this proceeding, natural persons and they alone are entitled to the privileges and immunities which section 1, of the Fourteenth Amendment secures for citizens of the United States. Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

The bill alleges that the amount in controversy exceeds the sum of Three Thousand Dollars exclusive of interest and costs. The Watch Tower Bible and Tract Society, which appears to be the principal beneficiary of the Manchester association has not shown anticipatory damages amounting to any such sum and certainly the individual complainants, acting in the mere capacity of agents of the parent corporation, cannot maintain diversity of citizenship or damages exceeding Three Thousand Dollars.

■ The mere allegation in the bill of complaint that an act is unconstitutional does not furnish a court of equity a sufficient ground for injunctive relief. For a court of equity to restrain state officials from enforcing state criminal laws requires the strongest kind of evidence and such procedure by a Federal court is so drastic that it is seldom granted. It brings into conflict the Federal laws with the laws of the state.

But for the fact that the United States Supreme Court has held unconstitutional an ordinance so closely resembling the ordinance of the City of Manchester, I would hold that the complainants had not made out a case for equitable relief and would have dismissed the bill leaving the complainants to the orderly procedure followed in the case of Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 669, 82 L.Ed. 949, and other similar cases which have been called to my attention. The ordinance in the Griffin case prohibited the distribution of any literature of any kind within the city limits without the permission of the city manager whether the articles were being sold or delivered free. This ordinance was declared unconstitutional and a conviction under it reversed.

Chief Justice Hughes in pronouncing the ordinance invalid on its face said: "We think that the ordinance is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. * * * The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion. * * * The ordinance cannot be saved because it relates to distribution and not to publication. 'Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value.' * * * As the ordinance is void on its face, it was not necessary for appellant to seek a permit under it. She was entitled to contest its validity in answer to the charge against her."

While most of the other cases I have examined may be distinguished in their facts from the case at bar, the Griffin case so closely resembles the case before me that I cannot ignore it, coming as it does from the highest court in the land.

■ Therefore, I am impelled to declare the ordinance under consideration invalid on its face and a permanent injunction must issue restraining the City of Manchester and its officials from enforcing it.

■ I hold that when the case went to hearing on its merits without objections being raised by counsel, the question of a preliminary injunction was waived. Healy, Chief of Police v. Ratta, 289 U.S. 701, 53 S.Ct. 522, 77 L.Ed. 1459.