3 So.2d 76

### JONES v. CITY OF OPELIKA.

5 Div. 343.

Supreme Court of Alabama.

May 22, 1941.

Writ of Certiorari Granted Oct. 13, 1941. See 62 S. Ct. 93, 86 L.Ed. ——.

Duke & Duke, of Opelika, for petitioner.

Grover C. Powell, of Atlanta, Ga., opposed.

THOMAS, Justice.

The certiorari seeks to review the ruling of the Court of Appeals in Rosco Jones v. City of Opelika, 3 So.2d 74, wherein it was held that an ordinance of the City of Opelika was void as applied to the defendant. The motion for rehearing which was denied by the Court of Appeals is, in part, as follows:

"The Court of appeals erred in holding that Section 1 under Conditions and Provisions of the City License Schedule for 1939, as applied to Appellant, is invalid—void, and of no effect.

"The Court of Appeals erred in holding that the entire City License Schedule for 1939, as applied to Appellant, was invalid—void, and of no effect, merely because Section 1 under Conditions and Provisions of the City License Schedule for 1939 was in conflict with the Fourteenth Amendment of the United States."

The opinion now sought to be reviewed, among other things, found:

"Appellant, when arrested, was going about the streets of the City of Opelika, holding two little pamphlets in his hand, and saying to the public: 'Get your two copies for five cents.'

"Copies of the two pamphlets mentioned are before us, and we find in them nothing obscene or immoral; or which advocates unlawful conduct; or which is calculated to 'disturb public order.' * * *

"Appellant is an ordained minister of the gospel of Jehovah's Kingdom and (as he contends, without dispute in the testimony) one of Jehovah's witnesses, consecrated to bear witness concerning the Kingdom of Jehovah God. The sole mission of the pamphlets is to set forth the gospel of the Kingdom of God as he believes and preaches it.

"He did not, he says, apply for or obtain a license (to 'peddle' his pamphlets) because he regarded himself as sent by Jehovah God to do his work and believes that such application would have been an act of disobedience to Jehovah's Commandments which would result in his eternal destruction.

"Appellant was tried in the Recorder's Court of the City of Opelika, and convicted, on the charge of selling or offering to sell books without a license being first obtained from the Clerk of said city as required by the city ordinance."

The judgment of the Court of Appeals is based on the case of Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 669, 82 L. Ed. 949, where Mr. Chief Justice Hughes said:

"The ordinance cannot be saved because it relates to distribution and not to publication. 'Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value.' Ex parte Jackson, 96 U.S. 727, 733, 24 L.Ed. 877. The license tax in Grosjean v. American Press Co. [297 U.S. 233, 245, 246, 56 S.Ct. 444, 80 L.Ed. 660], was held invalid because of its direct tendency to restrict circulation.

"As the ordinance is void on its face, it was not necessary for appellant to seek a permit under it. * * *"

In Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 60 S.Ct. 146, 152, 84 L.Ed. 155, the above case was explained by Mr. Justice Roberts, as follows:

"As said in Lovell v. Griffin [303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949], supra, pamphlets, have proved most effective instruments in the dissemination of opinion. And perhaps the most effective way of bringing them to the notice of individuals is their distribution at the homes of the people. On this method of communication the ordinance

imposes censorship, abuse of which engendered the struggle in England which eventuated in the establishment of the doctrine of the freedom of the press embodied in our Constitution. To require a censorship through license which makes impossible the free and unhampered distribution of pamphlets strikes at the very heart of the constitutional guarantees.

\* \* \* \* \*

"We are not to be taken as holding that commercial soliciting and canvassing may not be subjected to such regulation as the ordinance requires. Nor do we hold that the town may not fix reasonable hours when canvassing may be done by persons having such objects as the petitioner. Doubtless there are other features of such activities which may be regulated in the public interest without prior licensing or other invasion of constitutional liberty. \* \* \*"

In Cox v. State of New Hampshire, 61 S.Ct. 762, 765, 85 L.Ed. 1049, Mr. Chief Justice Hughes said, of an ordinance imposing a tax on parades, as follows:

"As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places. Lovell v. Griffin, 303 U.S. 444, 451, 58 S.Ct. 666, 668, 82 L.Ed. 949 [953]; Hague v. Committee for Industrial Organization, 307 U.S. 496, 515, 516, 59 S.Ct. 954, 963, 964, 83 L.Ed. 1423 [1436, 1437]; Schneider v. State of New Jersey [Town of Irvington], 308 U.S. 147, 160, 60 S.Ct. 146, 84 L.Ed. 155 [164]; Cantwell v. Connecticut, 310 U. S. 296, 306, 307, 60 S.Ct. 900, 904, 84 L.Ed. 1213 [1219, 1220], 128 A.L.R. 1352.

\* \* \* \* \*

"It was with this view of the limited objective of the statute that the state court considered and defined the duty of the licensing authority and the rights of the appellants to a license for their parade, with regard only to considerations of time, place and manner so as to conserve the public convenience.

\* \* \* \* \*

"The decisions upon which appellants rely are not applicable. In Lovell v. Griffin [303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949], supra, the ordinance prohibited the distribution of literature of any kind at any time, at any place, and in any manner without a permit from the city manager, thus striking at the very foundation of the freedom of the press by subjecting it to license and censorship.

\* \* \* \* \*

"In Schneider v. State [of New Jersey, Town of Irvington], supra, 308 U.S. page 163, 60 S.Ct. [146] page 151, 84 L.Ed. 165, the ordinance was directed at canvassing and banned unlicensed communication of any views, or the advocacy of any cause, from door to door, subject only to the power of a police officer to determine as a censor what literature might be distributed and who might distribute it. In Cantwell v. Connecticut, supra, 310 U.S. page 305, 60 S.Ct. [900] page 904, 84 L.Ed. 1213, 128 A.L.R. 1352, the statute dealt with the solicitation of funds for religious causes and authorized an official to determine whether the cause was a religious one and to refuse a permit if he determined it was not, thus establishing a censorship of religion. \* \* \* The statute, as the state court said, is not aimed at any restraint of freedom of speech, and there is no basis for an assumption that it would be applied so as to prevent peaceful picketing as described in the cases cited."

When these cases are considered, it is apparent that the Lovell case, supra, is based on ordinances that prohibited or censored the distribution of literature. It was decided on March 28, 1938. Thereafter, the case of Schneider v. State of New Jersey, Town of Irvington, supra, was decided, and it held that commercial distribution was subject to due regulation, as distinguished from the free distribution of literature, as we have indicated above.

In the instant case the defendant carried a bundle of booklets entitled "Face the Facts and learn the only way of escape," and "Fascism or Freedom." He cried "Two copies for five cents." The appellant in the Cox case, supra, and in the instant case did not apply for the permit or license required by the respective ordinances. The decision by Mr. Chief Justice Hughes was to the effect that the City of Manchester (Cox v. State of New Hampshire, supra, 61 S. Ct. 762, 85 L.Ed. 1049) had the right and authority to control its streets and that the same power extended to regulation thereof

by licenses. Such is the case now for decision.

It results, therefore, that the Lovell case, supra, is not decisive of the case at bar. The ordinances dealt with were "ordinances on prohibition or censorship" and those dealt with in the Cox case, supra, and in the case at bar, are licenses imposed for police protection and public order. It was held that a privilege license may be imposed without a conflict with the Constitution of the United States or any amendment thereof.

Since the decisions above referred to, the District Court of the United States has handed down a decision in Leiby et al. v. City of Manchester, 33 F.Supp. 842, 843, where an ordinance penalizing any person "who shall sell pamphlets or magazines without first procuring a badge from the superintendent of schools was invalid on its face as applied to members of a religious cult selling literature devoted to spreading of their religious beliefs, and city and its officials would be enjoined from enforcing ordinance. U.S.C.A.Const. Amends. 1, 14."

This decision was considered in City of Manchester v. Leiby, 1 Cir., 117 F.2d 661, 665, and the court again reviewed the case of Lovell v. City of Griffin, supra, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949, saying: "In our opinion the ordinance cannot be held void on its face under Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949, nor under any other controlling authority. The whole point of the Lovell case was that the practice of distributing literature of any kind, whether by sale or gratuitously, and not merely in the streets but anywhere within the city limits, was absolutely prohibited without the written permission of the city manager having first been obtained. This official, in exercising his discretion to give or withhold permission, was not even bound by any defined standards. The Supreme Court characterized the ordinance as restoring 'the system of license and censorship in its baldest form' (page 452 of 303 U.S., page 669 of 58 S.Ct., 82 L.Ed. 949), and held that it infringed the freedom of the press protected by the Fourteenth Amendment."

The opinion concluded with the statement:

"The permit required by the Manchester ordinance is of a similar sort. As the court said in the Cantwell case, supra, 310 U.S. at page 306, 60 S.Ct. at page 904, 84 L.Ed. 1213, 128 A.L.R. 1352, 'Even the exercise of religion may be at some slight inconvenience in order that the state may protect its citizens from injury. Without doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent.'

"The decree of the District Court is reversed, with costs to the appellants, and the case is remanded to that court with directions to dismiss the complaint."

And this decision of the Circuit Court of Appeals was presented to the Supreme Court of the United States, and in 61 S.Ct. 838, 85 L.Ed. ——, the writ of certiorari was denied on April 7, 1941.

To a full understanding of these cases it is necessary to note what was also said by the circuit judge in the case in which the writ was denied. The observations contained in the opinion of Judge Magruder were, in part, as follows:

" * * * the Manchester ordinance now before us contains no element of prior censorship upon the distribution of literature. It requires only a simple routine act of obtaining a badge of identification before a person can sell on the streets. This reasonable police regulation, in our opinion, imposes no substantial burden upon the freedom of the press or the free exercise of religion.

\*       \*       \*       \*       \*

"Under the National Prohibition Act, 27 U.S.C.A., § 1 et seq., the use of sacramental wine was subject to regulation and permit. See Shapiro v. Lyle, D.C., 30 F.2d 971. The regulations were no doubt applicable even to persons who might have believed it a gross impiety to apply for a civil permit before partaking of a divine sacrament. Similarly, as to the sacrament of marriage— one must get a marriage license from the civil authority, and in some states a brief waiting period is mandatory after the license is issued. These may be regarded as instances of rendering unto Ceasar the things which are Ceasar's; \* \* \*."

The foregoing late decisions of the Supreme Court of the United States indicate the right of the municipality to duly impose a license tax upon sales of tracts or booklets

when one goes about the streets of a city so selling or offering to sell the same.

See also Cantwell et al. v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352; Hague, Mayor, et al. v. Committee For Industrial Organization et al., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

The license schedule which was originally enacted is Schedule 146 of the 1935 Revenue Act (General Acts of Alabama, 1935, p. 499), which was amended by an act approved March 2, 1937, Gen.Acts of Alabama, Special Session 1936–37, p. 277, Code 1940, Tit. 51, § 611, levies a license on itinerant vendors or peddlers of merchandise. There appears to be no exemption in this section for preachers or others selling books, magazines, tracts or periodicals. The 1935 Act, supra, Section 368½, p. 564, specifically provided that the exemptions appearing in that Revenue Act were exclusive and all other exemptions were specifically repealed thereby.

The Code of 1940, Title 51, § 611, grants no exemptions under this schedule. There are no provisions of the revenue statutes for the state, counties or municipalities exempting ministers of the gospel from the respective license taxes exacted of all so engaged in selling, etc.

The subject of a proper nondiscriminatory license by a municipality has been recently considered by this court in State v. Stein, 240 Ala. 324, 199 So. 13, wherein many authorities are collected. The application to the Supreme Court of the United States to review the decision in said case was denied. Thomas F. Stein, Jr., doing business under the name and style of Stein Brokerage Co., petitioner, v. State of Alabama, 61 S.Ct. 838, 85 L.Ed. ——. Facts and opinion, State v. Stein, 29 Ala.App. 565, 199 So. 11; Id., 240 Ala. 324, 199 So. 13.

It results from the foregoing that the opinion of the Court of Appeals is founded in error and the petition for writ of certiorari is hereby granted.

Writ granted.

GARDNER, C. J., and BOULDIN, BROWN, FOSTER, and LIVINGSTON, JJ., concur.

KNIGHT, J., not sitting.